RENDERED: NOVEMBER 19, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1160-MR

PERIAN SALVIOLA                                                                      APPELLANT

v.                     APPEAL FROM FRANKLIN CIRCUIT COURT
                       HONORABLE PHILLIP J. SHEPHERD, JUDGE
                       ACTION NO. 18-CI-00611

COMMONWEALTH OF KENTUCKY,
ENERGY AND ENVIRONMENT
CABINET                                                                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND TAYLOR, JUDGES.

McNEILL, JUDGE: This case involves numerous regulatory violations by

Appellant, Perian Salviola (hereafter "Salviola"), and Viking Acquisition Group

(hereafter "Viking"). Viking was a corporate entity holding surface coal mining

permits issued pursuant to KRS[1] Chapter 350. Salviola was the sole manager of

---

[1] Kentucky Revised Statutes.

Viking. Appellee in the present case is the Commonwealth of Kentucky Energy and Environment Cabinet (hereafter "Cabinet").

On November 1, 2012, Salviola went from being an 80% shareholder of Viking to being the 100% shareholder. Thereafter, she transferred her ownership interest in Viking to a successor entity, Mine Investments, LLC, a subsidiary of NewLead Holdings. Attendant to the transfer of Viking were several attempted transfers of its mining permits. Because these attempted permit transfers occurred without the Cabinet's approval pursuant to KRS Chapter 350, between 2014-2018, forty-six final orders were issued by the Cabinet against Appellant attempting to rectify numerous regulatory violations. These were all the result of administrative hearings held by the Cabinet. There is no indication that Viking responded to these charges or the final administrative orders resulting therefrom. Salviola was not named as a party in any of the administrative cases. On June 14, 2018, the Cabinet filed suit in the Franklin Circuit Court against Viking and Salviola seeking enforcement of over one million dollars in fines and fees. The trial court subsequently entered a default judgment against both. On November 19, 2018, the court set aside default judgment against Salviola and sustained the default judgment against Viking. On November 27, 2018, Salviola was served with the Cabinet's complaint, to which she filed an answer. The Cabinet subsequently filed a motion for summary judgment which, after a hearing on the

matter, was granted by the trial court. Due to a clerical error in the monetary amount set out in the court's order granting summary judgement, the Cabinet filed a motion to correct the error, which the court granted. On October 2, 2019, the court entered an Amended Summary Judgment in the Cabinet's favor and awarded it fines and penalties totaling $1,420,460.00. Salviola now appeals to this Court as a matter of right. Having considered the record and the law, we affirm the judgment of the Franklin Circuit Court.

## I.     STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03. The Kentucky Supreme Court further explained this summary judgment standard in *Steelvest, Inc. v. Scansteel Service Center, Inc.*:

> While it has been recognized that summary judgment is designed to expedite the disposition of cases and avoid unnecessary trials when no genuine issues of material fact are raised, . . . this Court has also repeatedly admonished that the rule is to be cautiously applied. The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor. Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary

---

[2] Kentucky Rules of Civil Procedure.

> judgment if there is any issue of material fact.  The trial judge must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists.  It clearly is not the purpose of the summary judgment rule, as we have often declared, to cut litigants off from their right of trial if they have issues to try.

807 S.W.2d 476, 480 (Ky. 1991) (citations omitted).  "Because no factual issues are involved and only a legal issue is before the court on the motion for summary judgment, we do not defer to the trial court and our review is de novo." *Univ. of Louisville v. Sharp*, 416 S.W.3d 313, 315 (Ky. App. 2013) (citation omitted).  With these standards in mind, we turn to the applicable law and the facts of the present case.

## II.     ANALYSIS

Salviola raises three arguments on appeal:  1) that the Cabinet's actions violated its own regulations and are contrary to their federal counterpart; 2) the Cabinet's actions violated her due process rights; and 3) that the trial court erred in granting the Cabinet's motion for summary judgment because numerous genuine issues of material fact exist.  For the following reasons, we disagree.  The statutory and regulatory provisions relevant to the present case are as follows:

> KRS 350.135(1):
>
> No surface coal mining permit issued pursuant to this chapter shall be transferred by sale, assignment, lease, or otherwise except upon the written approval by the cabinet of a joint application submitted by both the transferor and the transferee. . . .

-4-

405 KAR[3] 8:001 Section 1(133):

"Transfer, assignment, or sale of permit rights" means a change in ownership or other effective control over the right to conduct surface coal mining operations under a permit issued by the cabinet.

KRS 350.990(1):

Any permittee, person, or operator who violates any of the provisions of this chapter or administrative regulations promulgated pursuant thereto or who fails to perform the duties imposed by these provisions, except the refusal or failure to obtain a permit or other authorization as provided in this chapter, or who violates any determination or order issued pursuant to the provisions of this chapter, may be liable to a civil penalty of not more than five thousand dollars ($5,000) for the violation, and an additional civil penalty of not more than five thousand dollars ($5,000) for each day during which the violation continues, and in addition, may be enjoined from continuing the violations provided in this section.

KRS 350.990(9):

When a corporate permittee violates any provision of this chapter or administrative regulation promulgated pursuant thereto or fails or refuses to comply with any final order issued by the secretary, any director, officer, or agent of the corporation who willfully and knowingly authorized, ordered, or carried out the violation, failure, or refusal shall be subject to the same civil penalties, fines, and imprisonment as may be imposed upon a person pursuant to this section.

---

[3] Kentucky Administrative Regulations.

In the trial court's amended summary judgment, the court stated the following in support of its decision:

> As recently as October 5, 2018, Defendant Salviola signed a Transfer Application identifying herself as having the authority, as a Member of Viking to approve the transfer of permit rights to Pike Clean Processing LLC. This demonstrates her acknowledgement that she was still in fact a . . . "director, officer, or agent of the corporation . . ." who exercised "ownership and control" over the permits at issue. See Cabinet Exhibits 53 and 54. Defendant Salviola failed to put on any proof that she was ever relieved of her obligations and liabilities as an owner or controller of a corporate permittee under the requirements of KRS 350, which govern the transfer if coal mining permits.

On appeal, Salviola has similarly failed to present any convincing argument or evidence that would counter the trial court's findings or require reversal thereof. Furthermore, Salviola's appeal includes several arguments that were not presented to the trial court. "[A]ppellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976), *overruled on other grounds by Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010). In any event, the federal statutes and regulations she cites in support of her argument on appeal are of little relevance to our determination, which is based on Kentucky law. Furthermore, there is nothing in the record indicating that Salviola and Viking were afforded insufficient process. *See Nat. Res. & Env't Prot. Cabinet v. Williams*, 768 S.W.2d 47 (Ky.

1989) (holding that Cabinet could seek enforcement of its decision against shareholder, even though shareholder was not involved in administrative proceeding, and that shareholder's refusal to cooperate in suit warranted imposition of judgment against her). Moreover, Salviola was afforded ample opportunity to present her defense and evidence to the trial court, and failed to do so. As for her remaining argument that the trial court erred in granting the Cabinet's motion for summary judgment because numerous genuine issues of material fact exist, she has failed to cite a single item of evidence that would support that claim. *See* CR 76.12.

## III. <u>CONCLUSION</u>

For the foregoing reasons, we hereby affirm the judgment of the Franklin Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Billy R. Shelton
Jordan W. Morgan
Lexington, Kentucky

BRIEF FOR APPELLEE:

John S. West
Frankfort, Kentucky