NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0634n.06
Filed: July 28, 2005

Case No. 04-6193

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MICHAEL S. CHILDERS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| PRODUCT ACTION INTERNATIONAL, | ) | DISTRICT OF KENTUCKY |
| INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

**BEFORE: BATCHELDER and GRIFFIN, Circuit Judges; GADOLA[*], District Judge.**

**ALICE M. BATCHELDER, Circuit Judge.** Plaintiff-Appellant Michael Childers appeals the district court's order granting summary judgment for Defendant-Appellee Product Action International, Inc. ("Product Action") in this diversity action for wrongful termination of employment. Because we conclude that the undisputed facts demonstrate that Product Action did not terminate Childers, an at-will employee, for exercising a right conferred by well-established legislative enactment or for refusing to violate the constitution or a statute, we will AFFIRM the judgment of the district court.

In September of 2001, Product Action, a corporation that provides sorting, inspection, and reworking services to automotive manufacturers, hired Childers to work as a quality inspector.

---

[*] The Honorable Paul V. Gadola, United States District Judge for the Eastern District of Michigan, sitting by designation.

Product Action contracted to provide third-party inspections of the automotive parts being produced by J.L. French, a corporation that supplies parts to General Motors ("GM"). Childers alleges that, while working at a J.L. French plant in Glasgow, Kentucky, his superiors instructed him to remove any defective parts from the production line and return them to the inspection area rather than recording the defects on data sheets and notifying GM. Childers claims that his boss, Scott Ritchie, threatened to fire him if he did not obey this instruction, and that Childers did, in fact, obey the instruction.

Early in 2002, Product Action transferred Childers to Birmingham, Alabama to perform inspection services for the Ogihara Company. The record reveals that Childers had trouble getting along with the other Product Action employees assigned to the Ogihara job. Mark Urschel, Product Actions's Human Resources Manager, testified that on April 12, 2002, he spoke with other Product Action Managers concerning Childer's performance, and all agreed that Childers should be terminated. Urschel then solicited the opinions of three of Childers's supervisors who complained that Childers repeatedly insulted his managers and had made unauthorized disclosures of company information to J.L. French and Ogihara. On April 17, 2002, Product Action sent Childers a "Termination Notice," which specified that Childers was being fired for "unprofessional behavior."

Childers admits that he followed Ritchie's order not to record defective parts. Childers also admits that, aside from posing a hypothetical question (which did not name the parties involved) to someone at the Attorney General's office, he did not report Product Action's conduct to any public authorities.

On April 15, 2003, Childers filed a complaint in a Kentucky Circuit Court alleging that Product Action terminated him because he questioned its practice of not recording defective parts

2

and notifying GM. Product Action removed the case to United States District Court on May 16, 2003, and filed a motion for summary judgment. On September 3, 2004, the district court entered an order granting summary judgment in favor of Product Action. Citing *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1984), the district court held that Product Action was entitled to terminate Childers, an at-will employee, for "good cause, no cause, or for a cause that some might consider morally indefensible," and that Childers could not rely on any of the narrow exceptions to Kentucky's employment-at-will doctrine because Childers did not report any of Product Action's alleged improprieties to public officials. Childers's timely appeal followed.

We review a district court's grant of summary judgment de novo. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). A motion for summary judgment should be granted only if the moving party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.,* 477 U.S. 242, 248 (1986). The court must take the nonmoving party's well-pleaded allegations as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 1 (1977). In diversity cases, we apply the law of the forum state, which, in this case, is Kentucky. *See Certain Interested Underwriters at Lloyds, London v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994). "We apply state law in accordance with the then controlling decision of the highest state court." *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296-97 (6th Cir. 2005) (quoting *John Hancock Fins. Servs. v. Old Kent Bank*, 346 F.3d 727, 733 (6th Cir. 2003)). We may affirm a decision of the district court if that decision is correct for any reason, including one not considered below. *Hoge v. Honda of America Manufacturing, Inc*., 384 F.3d 238, 243 (6th Cir. 2004).

3

Childers does not dispute that he was an at-will employee of Product Action. "[O]rdinarily an employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co.*, 666 S.W.2d at 731. The Supreme Court of Kentucky has recognized a narrowly defined exception to this "terminable-at-will" doctrine for wrongful discharge in violation of public policy. The Court limits at-will "employees' claims for wrongful discharge to those situations where the evidence established the employer was retaliating against the employee for exercising a right conferred by well-established legislative enactment or for refusing to violate the constitution or a statute." *Nelson Steel Corp. v. McDaniel*, 898 S.W.2d 66, 69 (Ky. 1995). To fall within the public policy exception to the "terminable-at-will" doctrine, an employee must prove: 1) that the discharge was contrary to a fundamental and well-defined public policy as evidenced by existing law; and 2) the policy must be evidenced by a constitutional or statutory provision. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). "The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact." *Id.*

Childers argues that he was fired for his refusal to falsify business records. In support, he relies on K.R.S. § 517.050, which states in pertinent part:

> (1) A person is guilty of falsifying business records when, with intent to defraud he:
> (a) Makes or causes a false entry to be made in the business records of any enterprise; or,
> (b) Alters, erases, obliterates, deletes, removes or destroys a true entry in the business records of any enterprise; or
> (c) Omits to make a true entry in the business records of an enterprise in violation of a duty to do so which he knows to be imposed upon him by law or by the nature of his position. . . .

4

As the district court correctly held, viewing the facts in the light most favorable to the non-moving party, we must assume that Childers was asked not to report defects found in the plant.[1] The district court stated that Childers would have been protected against retaliatory termination had he refused to violate K.R.S. § 517.050, but held that no wrongful termination exists where the employee does not report the allegedly illegal activity to the authorities. While the district court's decision is reasonable inasmuch as it is supported by an unpublished decision of the Kentucky Court of Appeals, *Zumot v. Data Management Co.*, No. 2002-CA-002454-MR, 2004 WL 405888 (Ky. App. 2004), we do not think that it was necessary to reach this issue.

Childers argues that his refusal to falsify business records triggers the public policy exception. Childers is mistaken. The record before this court simply would not permit a reasonable jury to find that Product Action retaliated against Childers for exercising a right or refusing to violate the law. *Nelson Steel*, 898 S.W.2d at 69. First, Childers claims that he did in fact falsify the records, as he was instructed to do (*see* Childers's deposition, J.A. p. 43). His own testimony, therefore, prevents him from claiming that he was retaliated against for refusing to violate the law or for exercising a right. Second, when asked during his deposition why he believed that Product Action terminated him, Childers answered "I believe Scott Ritchie wanted to get rid of me and so did Joe Pezz because I would not bow down and kiss Joe Pezz's ass." When asked "[a]ny other reasons you believe you were terminated from Product Action," Childers responded "I would have to come back on that. I mean my mind is drawing a blank right at this second." Moreover, none of Childers's supervisors testified that he was terminated for refusing to falsify records. Childers's allegation in his complaint—that his employment was terminated in retaliation for his attempting

---

[1]We note that Product Action disputes Childers's contention that he was ordered not to report defects to GM.

5

to correct the falsification of records—is not supported by the evidence in the record, and is wholly inconsistent with his deposition testimony. Finally, both the allegation in the complaint and the deposition testimony are wholly inconsistent with the claim that Childers makes on appeal, namely, that he was fired for *refusing* to violate the law. (*See* Childers's Brief at p. 7: "Mr. Childers was told to falsify business records . . . He refused. He was fired because he refused.")

Because the public policy exception to the "terminable-at-will" doctrine does not apply, Product Action was free to fire Childers, an at-will employee, for good cause or no cause at all. Accordingly, we **AFFIRM** the judgment of the district court.